UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x
UNITED STATES OF AMERICA,          :
                                   :
            Plaintiff,             :
                                   :   06 Cr. 339(BSJ)
       v.                          :
                                   :   **Opinion & Order**
SEAN STUCKEY,                      :
                                   :
            Defendant.             :
                                   :
----------------------------------x
**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

COPY MAILED / FAXED TO:
COUNSEL FOR PLTFF(S): ✓
COUNSEL FOR DFT(S): ✓
PLTFF PRO SE:
DFT. PRO SE:
DATE: 8/8/06
BY: DR

### INTRODUCTION

Defendant Sean Stuckey is a New York state parolee charged with possession of a firearm under 18 U.S.C. § 922(g)(1), and enhanced penalties under § 924(e). By motion dated July 17, 2006, Defendant moved to suppress from evidence a firearm and ammunition seized from his residence in connection with a home-visit by his parole officer. For the reasons below, Defendant's motion is denied without a hearing.

### BACKGROUND

Defendant was released on parole from New York state prison in 2002, sixteen years prior to the expiration of his prison term. (*See* Government's Memorandum of Law ("Gov. Br.") at 2.) Defendant was released under standard New York parole conditions that he, *inter alia*, "permit his



parole officer to visit him at his residence" and "permit the search and inspection of his person, residence and property." N.Y. Comp. Codes R. & Regs., Tit. 9, § 8003.2(d); (Gov. Br. at 2; Defendant Memorandum of Law ("Def. Br.") at 1.) Pursuant to this regulation, and prior to his release from prison, Defendant signed a standard release form expressly consenting to home-visits and searches. (Declaration of Sean Stuckey ("Stuckey Decl.") ¶ 4.)

On April 5, 2006, the Government filed a criminal complaint against Defendant in this Court (the "complaint"). The complaint, sworn to by New York City Police Department Detective Michael Rodriguez, alleges that he learned the following from Defendant's parole officer: (i) on or about March 20, 2006, the parole officer received a call from Defendant, who said that he was having "trouble with someone;" (ii) the parole officer went to Defendant's residence later that evening, and, after identifying himself, was admitted to the apartment by Defendant's co-inhabitant; (iii) that the parole officer knocked on Defendant's door and that Defendant opened it; and (iv) upon entering, the parole officer observed in plain view a

handgun on a plastic stand next to the door. (Compl. ¶ 2.)[1]
A discovery letter provided to the Defendant also states
that after the parole officer saw the gun, Defendant
informed the parole officer that he had ammunition and led
the parole officer to its location. (*See* Declaration of
Statsinger ¶ 10; Gov. Br. at 2.) The parole officer seized
both the gun and ammunition. (*See* Gov. Br. at 2.)

Defendant does not dispute that he called his parole
officer earlier in the day to report that he was having
trouble with someone. (*See generally* Stuckey Decl.) Nor
does Defendant dispute that his roommate provided consent
to the parole officer to enter the residence. (*See
generally id.*) Rather, Defendant merely claims that he is
"not aware of anything [he] might have done around that
date that would have led [his] parole officer *to suspect
that [he] had violated the terms of [his] release, and [he]
did not ask the parole officer to visit [him] at home.*"
(*See id.* ¶ 11) (emphasis added). Defendant implicitly
denies that he admitted the parole officer into his
bedroom; instead, he vaguely alleges that he was asleep and
"at some point" awoke and saw that his parole officer was

---

[1] The complaint notes that a second parole officer was
present with Defendant's parole officer on the night in
question. (Compl. ¶¶ 2(c)-(d).) According to the
complaint, it was Defendant's parole officer who entered
Defendant's bedroom and saw the gun. (Compl. ¶ 2(d).)

3

"present in his apartment." (*See id.* ¶¶ 8-9.) Finally, Defendant claims that his written consent to home-visits and searches -- as a condition of his parole -- was the "product of coercion and was not freely and voluntarily given." (*See id.* ¶ 5.)

Defendant now moves to have the gun and ammunition suppressed as the product of an unlawful search and seizure under the Fourth Amendment. (*See* Def. Br. at 1.) Essentially, Defendant claims that the search was illegal on the ground that his parole officer had no basis for suspecting that Defendant was in violation of his parole, and, thus, no basis for entering Defendant's bedroom without his consent. (*See* Def. Br. at 3-5). Moreover, he claims that his written consent to home-visits and searches was insufficient in itself to justify the search, and was otherwise unenforceable as the product of coercion. (*See id.* at 6-8.)

**DISCUSSION**

**A. Standard for a Suppression Hearing**

Defendant bears the burden of demonstrating that a suppression hearing is necessary to resolve disputed issues of material fact. *E.g., United States v. Watts*, 04 Cr. 1277(NRB), 2005 WL 2738948, at * 2 (S.D.N.Y. Oct. 21, 2005) (holding that no hearing was necessary to resolve parolee's

suppression motion). "A hearing is not required if the defendant's statements are general, conclusory or based on conjecture." See id. (quoting United States v. Viscioso, 711 F. Supp. 740, 745 (S.D.N.Y. 1989)).

**B.  Parolees Enjoy Very Little Fourth Amendment Protection From Search and Seizure**

"It is well settled that Fourth Amendment protections extend only to unreasonable government intrusion into legitimate expectations of privacy." United States v. Reyes, 283 F.3d 446, 457 (2d Cir 2002) (internal citations and marks omitted). Reasonableness is generally measured "'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interest.'" Samson v. California, 126 S. Ct. 2193, 2197 (2006) (quoting United States v. Knights, 534 U.S. 112, 118-19 (2001)). "Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term 'probable cause,' a lesser degree satisfies the constitution when the balance of governmental and private interests makes such standard reasonable." United States v. Knights, 534 U.S. 112, 121 (2001).

Within this framework, parolees enjoy very little Fourth Amendment protection. *See Samson*, 126 S. Ct. at 2197-2201; *United States v. Newton*, 369 F.3d 659, 664-66 (2d Cir. 2004). In large part, parolees' curtailed protection is owing to the government's special needs in monitoring parolees, as well as the significantly diminished privacy expectations held by parolees. *See Samson*, 126 S. Ct. at 2197-2202; *accord Newton*, 369 F.3d at 664-66.

Although parolees are subject to "a degree of impingement upon privacy that would not be constitutional if applied to the public at large," *Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987), such greater intrusions must occur pursuant to a rule or regulation "that itself satisfies the Fourth Amendment's reasonableness requirement," *id.* at 873. *See Newton*, 369 F.3d at 665.

In *Samson*, the Supreme Court recently upheld a *suspicionless* search of a defendant parolee under California state law, which requires that parolees agree in writing to be searched by parole and police officers, with or without cause. 126 S. Ct. at 2196, 2202.[2] The Court

---

[2] Specifically, the California statute at issue in *Samson* provides that every prisoner eligible for release on state parole "shall agree in writing to be subject to search or seizure by a parole officer or other peace

6

explained that parolees have severely diminished expectations of privacy by virtue of their parole status alone, and even less so when considered in the light of a state law that provides for suspicionless searches as a condition of release. *Id.* at 2199. The Court further explained, on the flip side, that the state has an "overwhelming interest" in supervising parolees. *Id.* at 2200 (internal citations omitted).

Similar to the California statute at issue in *Samson*, the relevant parole regulation in New York provides that "a [parolee] will permit his parole officer to visit him at his residence . . . and will permit the search and inspection of his person, residence and property." N.Y. Comp. Codes R. & Regs. Tit. 9, § 8003.2(d). Pursuant to this regulation, parolees -- like Defendant here -- must sign a standard release certificate expressly consenting to home-visits and searches. *See, e.g., People v. Huntley*, 43 N.Y.2d 175, 182, 371 N.E.2d 794, 798, 401 N.Y.S.2d 31, 35 (1977); *see also* N.Y. Comp. Codes R. & Regs., tit. 9, § 8003.1(c). This notwithstanding, the New York Court of

---

officer at any time of the day or night, with or without a search warrant and with or without cause." Cal. Pen. Code Ann. § 3067(a) (West 2000). This provision is somewhat tethered by California's decisional law prohibiting "arbitrary, capricious or harassing" searches. *See Samson*, 126 S. Ct. at 2202 (collecting cases).

7

Appeals cautioned in *Huntley* that such release certificates should not "be taken as an unrestricted consent to any and all searches . . . ." *Id.* Instead, the reasonableness inquiry "must turn on whether the conduct of the parole officer was *rationally and reasonably related* to the *performance of the parole officer's duty.*" 43 N.Y.2d at 181, 371 N.E.2d at 797, 401 N.Y.S.2d at 34 (emphasis added) (the so-called "reasonable relationship" requirement).

In the wake of *Samson*'s recent approval of suspicionless parolee searches under California law, New York's somewhat more protective "reasonable relationship" requirement easily passes muster under the Fourth Amendment. Indeed, the Second Circuit has previously upheld New York's parolee search law, even without *Samson*'s benchmark. *See United States v. Grimes*, 225 F.3d 254, 259, n.4 (2d Cir. 2000) (holding that New York's "reasonable relationship" requirement is both consistent and "coextensive" with the requirements of the Fourth Amendment"); *Newton*, 369 F.3d at 665-66 (same).

## C. The Search and Seizure Did Not Violate the Fourth Amendment

### 1. The Search Was Reasonable

Defendant's undisputed parole status, in conjunction with the search condition of his parole, may very well be

dispositive here. (Gov. Br. at 5 (relying on *Samson*, 126 S. Ct. at 2197-2202 (suspicionless search of parolee's person under California law did not violate Fourth Amendment))). While Defendant attempts to distinguish *Samson* on the ground that his bedroom was searched -- rather than his person (*see* Def. Br. at 3-4) -- neither the holding nor reasoning in *Samson* suggests that this distinction could sufficiently tip the reasonableness balance, if at all, in his favor.

Even if it generally could be said that a *free individual* has a greater expectations of privacy at home than in his person (*see* Def. Br. at 4), any differential must be considered *de minimis* for a *parolee* who is acutely aware of the search conditions attached to his liberty. *See* N.Y. Comp. Codes R. & Regs., tit. 9, § 8003.1(c) (2002) ("Parole . . . will not be granted to any individual unless he states in writing . . . that he read and understood the conditions of release."); *see also Samson*, 126 S. Ct. at 2199 (parolee who signed an order submitting to a search condition was "unambiguously" aware of it); *Knights*, 534 U.S. at 119-20 (probationer who accepted a clear and unambiguous search condition had "significantly diminished" expectation of privacy); *see also Reyes*, 283 F.3d at 460-

61.³ Moreover, the state has at least as much of an interest in searching a parolee's residence as it does in searching his person. *See* N.Y. Comp. Codes R. & Regs. Tit. 9, § 8003.2(d) (expressly requiring consent to home-visits as well as to the search of a parolee's "*person, residence and property*") (emphasis added).

In any event, to the extent that Defendant's parole status alone is not dispositive, *but cf. Samson*, 126 S. Ct. at 2197-2202, this case involves an additional undisputed fact that is: namely, the home-visit at issue was precipitated by Defendant's statement to his parole officer that he was having "trouble" with another. (Compl. ¶ 2(b).) Accepting this unrebutted allegation as true -- and there is no occasion not to⁴ -- the parole officer's home-visit clearly was "reasonably related" to the

---

³ Defendant's claim that the search condition was "coerced" has no bearing on his uncontested *awareness* of the condition, which is what informs his subjective privacy interests.

⁴ As explained *supra*, Defendant has not denied this allegation. Moreover, this Court may properly rely on hearsay contained in a sworn criminal complaint for purposes of this suppression motion. *See United States v. Raddatz*, 447 U.S. 667, 679 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial."); *U.S. v. Yousef*, 327 F.3d 56 (2d Cir. 2003) (same); *Avincola v. Stinson*, 60 F. Supp. 2d 133, 153 (S.D.N.Y. 1999) ("[T]here is no constitutional rule disallowing hearsay testimony in a suppression hearing . . . .").

10

performance of his duties. *See Huntley*, 43 N.Y.2d at 181, 371 N.E.2d at 797, 401 N.Y.S.2d at 34 (noting parole officer's dual responsibilities of protecting the public from the commission of further crimes *and* to "assist" a parolee's reintegration into his community); *see also Newton*, 369 F.3d at 665 n.2 (parole officer is charged with, among other things, "assist[ing] the offender in the rehabilitation process").

Contrary to Defendant's suggestion (*see* Def. Br. at 4-5), nothing in New York state or federal law requires individualized "suspicion" to search a parolee. *See Samson*, 126 S. Ct. at 2201 n.4 ("The touchstone of the Fourth Amendment is reasonableness, not individualized suspicion."); *Huntley*, 43 N.Y.2d 181, 371 N.E.2d at 797, 401 N.Y.S.2d at 34 (requiring only that search be reasonably related to parolee's duties). While suspicion clearly is sufficient to satisfy New York's "reasonable relationship" requirement, it is not necessary. Rather, as explained above, the search must at *most* have been reasonably related to the parole officer's duties, which, in this case, it clearly was.

## 2. Defendant's Consent Was Not Required (And Was Provided In Any Event)

The reasonableness of the parole officer's plain view search of Defendant's bedroom renders Defendant's consent to the search (or lack thereof) immaterial to the outcome of this motion. In any event, to the extent that consent was required, it was provided by Defendant in writing when he agreed to the terms of his parole. *See Newton*, 369 F.3d at 665 (holding that written acknowledgment to search condition was sufficient to establish consent); *see also Reyes*, 283 F.3d at 461.[5]

---

[5] Defendant's theory that his written consent to be search was coerced, and is thus unenforceable, has yet to find traction in either the Supreme Court or Second Circuit. *Cf. Samson*, 126 S. Ct. at 2199 n.3 (declining to address issue); *Newton*, 369 F.3d at 665 (finding that written consent was sufficient). While the Court has little doubt that Defendant -- if given the choice -- would not have provided his written consent to home-visits and searches, New York law does not afford parolees that opportunity: rather, prisoners who choose parole must also accept the state-imposed conditions on their newfound liberty. *See Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 365 ("In most cases, the State is willing to extend parole only *because* it is able to condition it upon compliance with certain requirements.") (emphasis added); *see also* N.Y. Comp. Codes R. & Regs., tit. 9, § 8003.1(c). For this Court to hold otherwise would unduly undermine the special needs of New York's parole system. *Cf. id.* (explaining that the interest in combating recidivism "is the very premise behind the system of close parole supervision.").

12

### 3. The Seizure of Contraband Was Proper

Finally, the gun that indisputably was found in plain view was properly seized without a warrant. *See, e.g., United States v. Massey*, 03 Cr. 938(WHP), 2004 WL 1243531, at *4 (S.D.N.Y. Jan. 21, 2004) ("It is well established that parole officers are entitled to seize contraband in plain view during a home visit.") (citing *Reyes*, 283 F.3d at 468). And because the gun was properly seized, ample ground existed to seize the ammunition as well.[6]

Accordingly, Defendant's motion to suppress is denied.

---

[6] The complaint is silent regarding the circumstances surrounding the seizure of the ammunition. That information, however, is apparently contained in a discovery letter provided by the Government to Defendant. (*See* Gov. Br. at 2; Def. Br. at 2; Statsinger Decl. ¶ 10). While that letter is not before the Court, there appears to be no dispute that the ammunition was seized after the gun was discovered in plain view. (*See* Gov. Br. at 2; Def. Br. at 2; Statsinger Decl. ¶ 10). Defendant challenges the seizure of the ammunition only on the ground that it was the tainted product of an alleged illegal search of Defendant's bedroom. (*See* Def. Br. at 8-9.) This derivative challenge necessarily fails in light of the Court's threshold and dispositive rulings that the initial search of Defendant's bedroom and seizure of the gun were lawful.

The parties are reminded that a conference is scheduled for August 11, 2006, at 10:00 a.m.

**SO ORDERED:**

_____
**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:   New York, New York
         August 8, 2006